FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 21 2014

JAMES W. McCORMACK, CLERK
By:_____ SAM0
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LEWIS DON HANNAH                                    PLAINTIFF

V.                    CASE NO. 1:14 cv 15  BSM

XTO ENERGY INC.                                     DEFENDANT

This case assigned to District Judge Miller
and to Magistrate Judge Deere

### NOTICE OF REMOVAL

COMES NOW the Defendant XTO Energy Inc. ("XTO"), and for its Notice of Removal, states:

1.      This action was filed by the Plaintiff in the Circuit Court of Cleburne County, Arkansas, on November 18, 2013.

2.      The Summons and Complaint filed by the Plaintiff in this action was served on the Defendant XTO on or about January 24, 2014.  A true and correct copy of all process, pleadings, and orders served upon XTO are attached hereto as Exhibit "A" and incorporated herein by this reference.

3.      Prior to filing this Notice of Removal the Defendant filed its Answer to the Plaintiffs' Complaint in the Circuit Court of Cleburne County, Arkansas.  A true and correct copy of the Answer filed by the Defendant is attached hereto as Exhibit "B".

4.      The Plaintiff is a citizen and resident of the State of Arkansas.  The Defendant is a citizen and resident of a state other than the State of Arkansas, and maintains its principal place of business in a state other than the State of Arkansas.  Complete diversity of citizenship exists between the Plaintiffs and the Defendant.

5.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6.     This Court has jurisdiction of the subject matter of this proceeding pursuant to 28 U.S.C. §1332, and this case may properly be removed to this Court pursuant to 28 U.S.C. §§1441 and 1446.

7.     Pursuant to the procedural requirements of 28 U.S.C. §1446, the Defendant hereby gives notice of the removal of this cause to the United States District Court for the Eastern District of Arkansas, Northern Division.

WHEREFORE, the Defendant prays that this action be removed from the Circuit Court of Cleburne County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Northern Division, and for all other just and proper relief to which it may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
P.O. Box 10127
Fort Smith, AR 72917-0127
Telephone: (479) 452-2200

By:     _____
        Robert M. Honea
        ABA #: 83089

*Attorneys for XTO Energy Inc.*

## CERTIFICATE OF SERVICE

I, Robert M. Honea, one of the attorneys for the Defendant XTO Energy Inc., do hereby certify that a true and correct copy of the above and foregoing pleading has been served upon all parties by forwarding a copy of same in the United States Postal Service, postage prepaid, on this 20 day of February, 2014, addressed to:

Luther Oneal Sutter
SUTTER & GILLHAM, PLLC
PO Box 2012
Benton, AR  72018

Robert M. Honea

IN THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS
CIVIL DIVISION

LEWIS DON HANNAH
Plaintiff

v.                                                    No. CV-2013-163

XTO ENERGY INC.
Defendant

SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

**XTO Energy Inc.**
AFS: Corporation Service Company
300 Springs Building, Suite 900
300 S. Spring Street
Little Rock, AR 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) – or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas – you must file with the clerk of this court a written answer to the complaint or a motion under rule 12 of the Arkansas rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Luther Oneal Sutter, Sutter & Gillham, P.L.L.C, P.O. Box 2012, Benton, AR 72018 (310 West Conway Street, Benton, AR 72015).

Additional Notices:    **Plaintiff's First Set of Interrogatories and Requests for Production of Documents Annexed**

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Address of the Clerk's Office                    CLERK OF COURT

Cleburne County Circuit Clerk
Cleburne County Courthouse
Courthouse
301 W. Main Street
Heber Springs, AR 72543

_____
(Signature of Clerk or Deputy Clerk)

Date: 11-18-2013

**EXHIBIT**

A

NO. _____   This summons is for <u>XTO Energy Inc.</u>.

**PROOF OF SERVICE**

☐ I personally delivered the summons and complaint to the individual at _____ [place] on _____ [date], or

☐ I left the summons and complaint in the proximity of the individual by _____ after he/she refused to receive it when I offered it to him/her, or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____ [address] with _____ [name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant] on _____ [date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because. _____

My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____   SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]


**To be completed if service is by a person other than a sheriff or a deputy sheriff:**

Date: _____   By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

_____

IN THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS

KAREN GILES
CIRCUIT CLERK

2013 NOV 18 PM 2:

LEWIS DON HANNAH                                                    PLAINTIFF

VS.                          CASE NO: CV-2013-163

XTO ENERGY INC.                                                    DEFENDANT

## COMPLAINT WITH PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES THE PLAINTIFF, by and through Counsel and for his Complaint he states:

### PARTIES AND JURISDICTIONS

1.      Plaintiff is a resident and citizen of the State of Arkansas who sues the Defendant for breach of contract.  Defendant is a foreign corporation authorized to do business in the State of Arkansas, who has leased Plaintiff's mineral rights from him.  Defendant regularly does business in this county.  This court has personal jurisdiction, as well as subject matter jurisdiction.  Venue is proper.

### GENERAL ALLEGATIONS OF FACTS

2.      Plaintiff leased his mineral rights in 2006.  A copy of that lease is **Exhibit A**.

3.      Subsequently, Plaintiff re-leased his mineral rights in the document attached a **Exhibit B**.

4.      Defendant then began producing Plaintiff's mineral rights.

5.      However, Defendant refuses to pay Plaintiff in accordance with **Exhibit B**. Specifically, Plaintiff is not receiving twenty percent (20%) of his mineral rights as the parties agreed.

6.      Accordingly, Defendant has breached his contract.

7.      Plaintiff is entitled to appropriate and compensatory damages.

8.      Plaintiff has a right to possession of the proceeds.  However, the Defendant has converted these proceeds willfully and intentionally.

Page 1 of 2

9.      Despite demand, Defendant continues to breach its contract with the Plaintiff.

10.     As direct and proximate cause of Defendant's breach, Plaintiff has lost royalty, has lost interest payments and incurred other damages in an amount to be proven at trial. Defendant has converted Plaintiff's mineral interest proceeds such that the Defendant should be held liable for punitive damages.

WHEREFORE Plaintiff prays for appropriate compensatory and punitive damages exceeding $75,000.00, for a trial by jury, for reasonable attorney's fees, for costs, and for all other proper relief.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910  Office
501-315-1916  Facsimile
Attorney for the Plaintiff

By:     /s/ Luther Oneal Sutter
        Luther Oneal Sutter, AR Bar No. 95031
        luthersutter.law@gmail.com

g:\doc\Hannah, Don & Kenzie\PLD\2013-11-14  COM - Hannah, Don .doc

# OIL AND GAS LEASE
(PAID-UP)

AGREEMENT, Made and entered into this 22nd day of August, 2003, by and between Lewis Don Hannah, whose address is 113 Brangard; Cabot, AR 72023, parties of the first part, hereinafter called lessor (whether one or more), and Fairway Land Services, Inc., P. O. Box 3495, Fort Smith, AR 72913, party of the second part, hereinafter called lessee.

WITNESSETH, That the said lessor for and in consideration of $10.00 and more dollars, cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate), gas (including casing-head gas and helium and all other constituents), and for laying pipe lines, and building tanks, power stations and structures thereon, to produce, save and take care of said petroleum, all that certain tract of land, together with any reversionary rights therein situated in the County of Cleburne, State of Arkansas, described as follows, to-wit:

**Beginning at a point 293 feet North of the Southwest corner of SW/4 NW/4, then running North 440 feet; East 1980 feet; South 440 feet; West 1980 feet to the Point of Beginning**

of Section 33 Township 9 North, Range 10 West, and containing 20.00 acres, more or less and also, in addition to the above described land, any and all strips or parcels of land, other than those above describing regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises". It is the intention of the Lessor herein that the Leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

It is agreed that this lease shall remain in force for a term of **five (5)** years from date (herein called primary term) and as long thereafter as oil or gas, or either of them, is produced from said land by lessee.

In consideration of the premises the said lessee covenants and agrees:

1st To deliver to the credit of lessor free of cost, in the pipe line to which it may connect its wells, the 3/16th part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises.

2nd To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 3/8th of the gross proceeds received for the gas sold, used off the premises or in the manufacture of products therefrom, but in no event more than 3/8th of the actual amount received by the lessee, said payments to be made monthly. During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, lessee shall pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.

3rd To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casing-head gasoline or dry commercial gas, 3/8th of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.

If the lessee shall commence to drill a well or commence reworking operations on an existing well within the term of this lease or any extension thereof, or on acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.

Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands or to all strata or any stratum or strata, for the production primarily of oil or primarily of gas with or without distillate. However, no unit for the production primarily of oil shall embrace more than 40 acres, or for the production primarily of gas with or without distillate more than 640 acres, provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be used in such allocation of allowable. Lessee shall file written unit designations in the county in which the leased premises are located. Operations upon and production from the unit shall be treated as if such operations were upon or such production was from the leased premises whether or not the well or wells are located thereon. The entire acreage so pooled into a unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be as below provided, and except that in calculating the amount of any shut-in gas royalties, only that part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessor shall pay Lessee, in lieu of other royalties thereon, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or his royalty interest therein on an acreage basis bears to the total acreage in the unit.

If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the lessor only in the proportion which his interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operations thereon, except water from wells of lessor.

When requested by the lessor, lessee shall bury his pipelines below plow depth.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without the written consent of the lessor.

Lessee shall pay for all damages caused by its operations to growing crops on said land.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. However, no change or division in ownership of the land or royalties shall change the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof. In case lessee assigns this lease, in whole or in part, lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated, in whole or in part, nor lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation.

EXHIBIT
A

This lease shall be effective as to each lessor the executing hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the lessors above named may not join in the execution hereof. The word "Lessor" as used in this lease meant the party or parties who execute this lease as Lessor, although not named above.

Lessor may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to lessor, or by placing a release of record in the proper County.

Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor by payment any mortgages, taxes or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out, above and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

IN TESTIMONY WHEREOF, we sign this ___ day of _August_ 2003.

Lessor:

_Lewis Don Harrah_
Lewis Don Harrah

CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit
Court and Ex-Officio Recorder do hereby
certify that this instrument was FILED
FOR RECORD and is RECORDED on this
DATE _Nov. 12  2003  3:49_ and
TIME as set in BOOK OL 27 PAGE 11-712
KAREN GILES, Clerk  ___ D.C.

KAREN GILES
CIRCUIT CLERK
CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS
03 NOV 12  PM 3 49

STATE OF ARKANSAS          )
                          )  INDIVIDUAL ACKNOWLEDGMENT
COUNTY OF                  )

Before me, the undersigned, a Notary Public, in and for said County and State, on this ___ day of _August_ 2003, personally appeared _Lewis Don Harrah_ to me known to be the identical person who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _1 DEC 2008_                    _____
                                                        NOTARY PUBLIC

STATE OF                   )
                          )  JOINT ACKNOWLEDGEMENT
COUNTY OF                  )

Before me, the undersigned, a Notary Public, in and for said County and State, on this ___ day of _____ 2003, personally appeared _____, known to me to be the identical persons who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _____                    _____
                                                        NOTARY PUBLIC

STATE OF                   )
                          )  CORPORATE ACKNOWLEDGEMENT
COUNTY OF                  )

Before me, the undersigned, a Notary Public, in and for said County and State, on this ___ day of _____ appeared in person the within-named _____ and _____ to me personally known, who stated that they were the President and _____ of a corporation and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _____                    _____
                                                        NOTARY PUBLIC

# Ratification

### KNOW ALL MEN BY THESE PRESENTS, THAT

WHEREAS, Fairway Land Services, Inc., P.O. Box 3495, Fort Smith, AR  72913, hereinafter referred to as Lessee, is the present owner of all rights, title, and interest under that certain Oil, Gas and Mineral Lease dated August 22, 2003, executed by Lewis Don Hannah, individually and as Trustee, 113 Brungardt, Cabot, AR  72023, as Lessor, and recorded in Book _GA29_ , Page _382_ , of the County Records, Cleburne County, State of Arkansas, covering the following described land situated in the said County and State.

#### Section 22, Township 9 North, Range 10 West

A part of the SW/4 NW/4 and a part of the W/2 SE/4 NW/4, more particularly described as beginning at an iron pin for the Northwest corner of said SW/4 NW/4; thence along the North boundary of said SW/4 NW/4, S 88 deg. 43'15" E 1965.19 feet to an iron pin found for the Northeast corner of said W/2 SE/4 NW/4; thence along the East boundary of said W/2 SE/4 NW/4, S 01 deg. 02'59" W 415.36 feet to an iron pin; thence leaving said East boundary, N 88 deg. 38'57" W 1755.82 feet to an iron pin; thence N 01 deg. 08'08" E 210.00 feet to an iron pin; thence N 88 deg. 38'57" W 210.00 feet to an iron pin on the West boundary of said SW/4 NW/4; thence along said West boundary, N 01 deg. 08'08" E 202.90 feet to the point of beginning, containing 17.67 acres, more or less.

AND WHEREAS, the undersigned desires to adopt, ratify and confirm said Lease insofar as it covers any present or future right, title and interest of the undersigned in and to the above-described land.
Including all right of dower, curtesy and homestead.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby adopts, ratifies and confirms said Lease  and hereby grants, leases and lets unto Lessee the above-described lands subject to and in accordance with all of the terms and provisions of said lease. Provided, however, the undersigned shall not be paid any portion of the bonuses, royalties or rentals, payable under said Lease, during the lifetime of the Lessor, but such bonuses, royalties or rentals, if any, shall be paid to the Lessor therein named, during his lifetime.

This agreement is binding upon the heirs, successors, legal representatives, and assigns of the undersigned.

EXECUTED this __22ND__ day of August, 2003.

X _Kenzie Hannah_
Kenzie Hannah

### ACKNOWLEDGEMENT

STATE OF ARKANSAS        )
                                          )ss
COUNTY OF ~~Cleburne~~    )
          SEBASTIAN

On this __22ND__ day of August, 2003, before me the undersigned Notary Public, in and for said County and State, personally appeared Kenzie Hannah, known to me to be the person whose name is subscribed to the foregoing and acknowledged to me that the same was executed for the uses, purposes and consideration therein expressed and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this __22ND__ day of August 2003.

My commission expires:

1 DEC 2008                                          _____
                                                         Notary Public

### CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit Court and Ex-Officio Recorder do hereby certify that this instrument was FILED FOR RECORD and is RECORDED on this DATE _Nov. 13, 2003  3:49_ and TIME is _____ and in BOOK _OE27_ PAGE _708_
KAREN GILES, clerk
_____ _Thelma Smith_ D.C.

KAREN GILES
CIRCUIT CLERK
03 NOV 12  PM 3:49
CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS



# OIL AND GAS LEASE
### (PAID-UP)

AGREEMENT, Made and entered into this 22nd day of August, 2003, by and between Lewis Don Hancock, Individually and as Trustee, whose address is 113 Brentgarret, Cabot, AR 72022, parties of the first part, hereinafter called lessor (whether one or more), and Fairway Land Services, Inc., P. O. Box 3495, Fort Smith, AR  72913, party of the second part, hereinafter called lessee.

WITNESSETH, That the said lessor, for and in consideration of $10.00 and more dollars, cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessor, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for and producing but not limited to distillate and condensate, gas (including casing-head gas and helium and all other constituents), and for laying pipe lines, and building tanks, power stations and structures thereon, to produce, save and take care of said products, all that certain tract of land, together with any reversionary rights therein situated in the County of Cleburne, State of Arkansas, described as follows, to-wit:

**For Legal Description see Exhibit "A" Attached hereto and made a part thereof.**

of Section 22, Township 9 North, Range 10 West, and containing 17.54 acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises". It is the intention of the Lessor herein that the Leased premise cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

It is agreed that this lease shall remain in force for a term of five (5) years from date (herein called primary term) and as long thereafter as oil or gas, or either of them, is produced from said land by lessee.

In consideration of the premises the said lessee covenants and agrees:

1st  To deliver to the credit of lessor free of cost, in the pipe line to which it may connect its wells, the 1/8th part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises.

2nd  To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 1/8th of the gross proceeds received for the gas sold, used off the premises or in the manufacture of products therefrom, but in no event more than 1/8th of the actual amount received by the lessee, said payments to be made quarterly. During any period (whether before or after the expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, lessee shall pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.

3rd  To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, 1/8th of the gross proceeds, at the mouth of the well, received by lessor for the gas during the time such gas shall be used, said payments to be made monthly.

If the lessee shall commence to drill a well or commence re-working operations on an existing well within the term of this lease or any extension thereof, or on acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with the effect as if such well had been completed within the term of years first mentioned.

Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands or any strata or any stratum or strata, for the production primarily of oil or primarily of gas with or without distillate. However, as unit for the production primarily of oil shall embrace more than 40 acres, or for the production primarily of gas with or without distillate more than 640 acres, provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace so much additional acreage as may be so prescribed or as may be used in such allocation of allowable. Lessee shall file written unit designations in the county in which the leased premises are located. Operations upon and production from the unit shall be treated as if such operations were upon or such production was from the leased premises whether or not the well or wells be located thereon. The entire acreage within a said unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be as herein provided, and except that in calculating the amount of any shut in gas royalties, only the part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessee shall pay Lessor, in lieu of other royalty therein, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or his royalty interest therein on an acreage basis bears to the total acreage in the unit.

If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the lessor only in the proportion which his interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operations thereon, except water from wells of lessor.

When requested by the lessor, lessee shall bury his pipelines below plow depth.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without the written consent of the lessor.

Lessee shall pay for all damages caused by its operations to growing crops on said land.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. However, no change or division in ownership of the land or its royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the lessor until after the lessee has been furnished with a written transfer or assignment or a true copy thereof. In case lessee assigns this lease, in whole or in part, lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated, in whole or in part, nor lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation.

PREPARED BY
FAIRWAY LAND SERVICES
P.O. BOX 3495, FT. SMITH, AR 72913



This lease shall be effective as to each lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the lessors above named may not join in the execution hereof. The word "Lessor" as used in this lease means the party or parties who execute this lease from time to time surrender this lease to any part or parts of the leased premises by delivering or mailing a release thereof to lessor, or by placing a release of record in the proper County.

Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor by payment any mortgage, taxes or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out above and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

IN TESTIMONY WHEREOF, we sign this the 20th day of August, 2003.

Lessor:

x Lewis Don Hannah
Lewis Don Hannah

CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit
Court and Ex-Officio Recorder de Jesus
certify that this instrument was FILED
FOR RECORD and is RECORDED on this
DATE 10-6-2003 4:11
TIME I'm said in BOOK No. 27 PAGE 383-384
KAREN GILES clerk
by Heather Smith D.C.

KAREN GILES
CIRCUIT CLERK
CLEBURNE COUNTY
HEBER SPRINGS ARKANSAS
2003 OCT -6  PM 4: 11

STATE OF ARKANSAS )
COUNTY OF CLEBURNE )  INDIVIDUAL ACKNOWLEDGEMENT

Before me, the undersigned, a Notary Public, in and for said County and State, on this 20th day of August, 2003, personally appeared Lewis Don Hannah, individually and as Trustee, to me known to be the identical person who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.
IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above

My Commission Expires DEC 2009

Patti Hill
NOTARY PUBLIC

STATE OF )
)  JOINT ACKNOWLEDGEMENT
COUNTY OF )

Before me, the undersigned, a Notary Public, in and for said County and State, on this _____ day of _____, 2003, personally appeared _____ known to be the identical persons who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.
IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _____

_____
NOTARY PUBLIC

STATE OF )
)  CORPORATE ACKNOWLEDGEMENT
COUNTY OF )

Before me, the undersigned, a Notary Public, in and for said County and State, on this _____ day of _____, _____ appeared in person the within-named _____ to me personally known, who stated that they were the President and _____ of a corporation and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and on behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.
IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _____

_____
NOTARY PUBLIC

383

Exhibit "A", attached hereto and made a part of that certain Oil and Gas Lease dated August 22, 2003, by and between Louis Don Hannah, Individually and as Trustee, as Lessor and Fairway Land Services, Inc. as Lessee.

### Section 22, Township 9 North, Range 10 West

A part of the SW/4 NW/4 and a part of the W/2 SE/4 NW/4, more particularly described as beginning at an iron pin for the Northwest corner of said SW/4 NW/4; thence along the North boundary of said SW/4 NW/4, S 88 deg. 43'15" E 1965.19 feet to an iron pin found for the Northeast corner of said W/2 SE/4 NW/4; thence along the East boundary of said W/2 SE/4 NW/4, S 01 deg. 02'59" W 415.36 feet to an iron pin; thence leaving said East boundary, N 88 deg. 38'57" W 1755.82 feet to an iron pin; thence N 01 deg. 08'08" E 210.00 feet to an iron pin; thence N 88 deg. 38'57" W 210.00 feet to an iron pin on the West boundary of said SW/4 NW/4; thence along said West boundary, N 01 deg. 08'08" E 202.90 feet to the point of beginning, containing 17.67 acres, more or less.

ALSO,

Beginning at a point 473 feet North of the Southwest corner of SW/4 NW/4, then running North 440 feet; East 1980 feet; South 440 feet; West 1980 feet to the Point of Beginning, LESS AND EXCEPT a tract beginning at the SW corner of SW/4 NW/4, then running North 01 deg. 53'30" East 473 feet to the Point of Beginning; North 01 deg. 53'30" East 440 feet; South 87 deg. 57'16" East 524.3 feet; South 01 deg. 53'30" West 440 feet; North 87 deg. 57'16" West 524.3 feet to the Point of Beginning.

ALSO,

N/2 NW/4 SW/4; N/2 NW/4 SE/4 NW/4

Signed for Identification:

X _Lewis Don Hannah_

Lewis Don Hannah, Individually and as Trustee

PREPARED BY
FAIRWAY LAND SERVICES
P.O. BOX 846, JONESBORO AR 72403

384




# OIL AND GAS LEASE
## (PAID-UP)

AGREEMENT. Made and entered into this 22nd day of August, 2003, by and between Lewis Don Hannah, individually and as Trustee, whose address is 113 Brengwood, Cabot, AR 72023, parties of the first part, hereinafter called lessor (whether one or more), and Fairway Land Services, Inc., P. O. Box 3495, Fort Smith, AR 72913, party of the second part, hereinafter called lessee.

WITNESSETH, That the said lessor, for and in consideration of \$10.00 and more dollars, cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate), gas (including casinghead gas) and helium and all other constituents), and for laying pipe lines, and building tanks, power stations and structures thereon, to produce, save and take care of said products, all that certain tract of land, together with any reversionary rights therein situated in the County of Cleburne, State of Arkansas, described as follows, to-wit:

For Legal Description see Exhibit "A" Attached hereto and made a part thereof.

of Section 22 Township 9 North, Range 10 West, and containing 57.54 acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises". It is the intention of the Lessee herein that the Leased premises above and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accessions thereto whether or not herein accurately and completely described.

It is agreed that this lease shall remain in force for a term of five (5) years from date (herein called primary term) and as long thereafter as oil or gas, or either of them, is produced from said land by lessee.

In consideration of the premises the said lessee covenants and agrees:

1st To deliver to the credit of lessor free of cost, in the pipe line to which it may connect its wells, the 1/8th part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises.

2nd To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 1/8th of the gross proceeds received for the gas sold, used off the premises or in the manufacture of products therefrom, but in no event more than 1/8th of the actual amount received by the lessee, said payments to be made monthly. During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, lessee shall pay or tender a royalty of One Dollar (\$1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.

3rd To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, 1/8th of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.

If the lessor shall commence to drill a well or commence reworking operations on an existing well within the term of this lease or any extension thereof, or an acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.

Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands as to all strata or any stratum or strata, for the production principally of oil or primarily of gas with or without distillate. However, as unit for the production principally of oil shall embrace more than 40 acres, or for the production principally of gas with or without distillate more than 640 acres, provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be held to each allocation of allowable. Lessee shall file written unit designations in the county in which the leased premises are located. Operations over and production from the unit shall be treated as if such operations were upon or such production was from the leased premises whether or not the well or wells are herein shown. The entire acreage within a unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be that fraction or percentage of royalty provided in this lease which the amount of his acreage placed in the unit, or his royalty interest therein on an acreage basis bears to the total acreage in the unit.

If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the lessor only in the proportion which his interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for its operations thereon, except water from wells of lessor.

When requested by the lessor, lessee shall bury his pipelines below plow depth.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without the written consent of the lessor.

Lessee shall pay for all damages caused by its operations to growing crops on said land.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. However, no change or division in ownership of the land or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof. In case lessee assigns this lease, in whole or in part, lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated, in whole or in part, nor lease held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation.

PREPARED BY
FAIRWAY LAND SERVICES
P.O. BOX 3495, FT SMITH, AR 72913

This lease shall be effective as to each lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the lessors above named may not join in the execution hereof. The word "Lessor" as used in this lease means the party or parties who execute this lease as Lessor, although not named above.

Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to lessor, or by placing a release of record in the proper county.

Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor by payment any mortgages, taxes or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out above and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

IN TESTIMONY WHEREOF, we sign this the 22nd day of AUGUST, 2003.

Lessor:

X Lewis Don Hannah
Lewis Don Hannah

CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit
Court and Ex-Officio Recorder do hereby
certify that this instrument was FILED
FOR RECORD and is RECORDED on this
DATE 03-OCT-6 at 4:11
TEMP.___ and in BOOK ___ PAGE 382-384
KAREN GILES clerk
_____ D.C.

**INDIVIDUAL ACKNOWLEDGEMENT**

STATE OF ARKANSAS                }
COUNTY OF _____            }

Before me, the undersigned, a Notary Public, in and for said County and State, on this 22nd day of AUGUST 2003, personally appeared Lewis Don Hannah, individually and as Trustee, to me known to be the identical person who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: DEC 2005

_____
NOTARY PUBLIC

**JOINT ACKNOWLEDGEMENT**

STATE OF            }
COUNTY OF           }

Before me, the undersigned, a Notary Public, in and for said County and State, on this ____ day of ____ 2003, personally appeared _____ known to be the identical persons who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _____

_____
NOTARY PUBLIC

**CORPORATE ACKNOWLEDGEMENT**

STATE OF            }
COUNTY OF           }

Before me, the undersigned, a Notary Public, in and for said County and State, on this ____ day of ____ appeared in person the within-named _____ and _____ to me personally known, who stated that they were the President and _____ of a corporation and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires: _____

_____
NOTARY PUBLIC

Exhibit "A", attached hereto and made a part of that certain Oil and Gas Lease dated August 22, 2003, by and between Louis Don Hannah, Individually and as Trustee, as Lessor and Fairway Land Services, Inc. as Lessee.

### Section 22, Township 9 North, Range 10 West

A part of the SW/4 NW/4 and a part of the W/2 SE/4 NW/4, more particularly described as beginning at an iron pin for the Northwest corner of said SW/4 NW/4; thence along the North boundary of said SW/4 NW/4, S 88 deg. 43'15" E 1965.19 feet to an iron pin found for the Northeast corner of said W/2 SE/4 NW/4; thence along the East boundary of said W/2 SE/4 NW/4, S 01 deg. 02'59" W 415.36 feet to an iron pin; thence leaving said East boundary, N 88 deg. 38'57" W 1755.82 feet to an iron pin; thence N 01 deg. 08'08" E 210.00 feet to an iron pin; thence N 88 deg. 38'57" W 210.00 feet to an iron pin on the West boundary of said SW/4 NW/4; thence along said West boundary, N 01 deg. 08'08" E 202.90 feet to the point of beginning, containing 17.67 acres, more or less.

ALSO,

Beginning at a point 473 feet North of the Southwest corner of SW/4 NW/4, then running North 440 feet; East 1980 feet; South 440 feet; West 1980 feet to the Point of Beginning, LESS AND EXCEPT a tract beginning at the SW corner of SW/4 NW/4, then running North 01 deg. 53'30" East 473 feet to the Point of Beginning; North 01 deg. 53'30" East 440 feet; South 87 deg. 57'16" East 524.3 feet; South 01 deg. 53'30" West 440 feet; North 87 deg. 57'16" West 524.3 feet to the Point of Beginning.

ALSO,

N/2 NW/4 SW/4; N/2 NW/4 SE/4 NW/4

Signed for Identification:

X *Lewis Don Hannah*

Lewis Don Hannah, Individually and as Trustee

PREPARED BY
FAIRWAY LAND SERVICES
P.O.BOX 846, FT.SMITH,AR 72913

384

# OIL AND GAS LEASE
### (PAID-UP)

AGREEMENT, Made and entered into this 22nd day of August, 2003, by and between Lewis Don Hannak, whose address is (13 Brangards, Cabot, AR 72023, parties of the first part, hereinafter called lessor (whether one or more), and Fairway Land Services, Inc., P. O. Box 3495, Fort Smith, AR 72913, party of the second part, hereinafter called lessee.

WITNESSETH, That the said lessor, for and in consideration of $10.00 and more dollars, cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate), gas (including casing-head gas and helium and all other constituents), and for laying pipe lines, and building tanks, power stations and structures thereon, to produce, save and take care of said products, all that certain tract of land, together with any reversionary rights therein situated in the County of Cleburne, State of Arkansas, described as follows, to-wit:

Beginning at a point 33 feet North of the Southwest corner of SW¼ NW¼, then running North 440 feet, East 1980 feet; South 440 feet; West 1980 feet to the Point of Beginning

of Section 23 Township 9 North, Range 10 West, and containing 20.00 acres, more or less, and also, in addition to the above described land, any and all acres or parcels of land, other than those constituting regular governmental sub-divisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises". It is the intention of the Lessor hereby that the Leased premises cover and include all land owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

It is agreed that this lease shall remain in force for a term of five (5) years from date (herein called primary term) and as long thereafter as oil or gas, or either of them, is produced from said land by lessee.

In consideration of the premises the said lessee covenants and agrees:

1ˢᵗ To deliver to the credit of lessor free of cost, in the pipe line to which it may connect its wells, the 1/8th part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises.

2ⁿᵈ To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 1/8th of the gross proceeds received for the gas sold, used off the premises or in the manufacture of products therefrom, but in no event more than 1/8th of the actual amount received by the lessee, said payments to be made monthly. During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, lessee shall pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut in and thereafter on the anniversary date of this lease during this period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.

3ʳᵈ To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, 1/8th of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.

If the lessee shall commence to drill a well or commence reworking operations on an existing well within the term of this lease or any extension thereof, or as acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.

Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands as to all strata or any stratum or strata, for the production primarily of oil or primarily of gas with or without distillate. However, no unit for the production primarily of oil shall embrace more than 40 acres, or for the production primarily of gas with or without distillate more than 640 acres, provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be used in such allocation of allowable. Lessee shall file written unit designations in the county in which the leased premises are located. Operations upon and production from the unit shall be treated as if such operations were upon or such production was from the leased premises whether or not the well or wells are located thereon. The entire acreage within a unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be as below provided, and except that in calculating the amount of any shut in gas royalties, only the part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessee shall pay Lessor, in lieu of other royalties thereon, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or his royalty interest therein on an acreage basis bears to the total acreage so placed in the unit.

If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the lessee only in the proportion which his interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for his operations thereon, except water from wells of lessor.

When requested by the lessor, lessee shall bury his pipelines below plow depth.

No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without the written consent of the lessor.

Lessee shall pay for all damages caused by his operations to growing crops on said land.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. However, no change or division in ownership of the land or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the Lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof. In case lessee assigns this lease, in whole or in part, lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated, in whole or in part, nor lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation.

711

This lease shall be effective as to each lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the lessors above named may not join in the execution hereof. The word "Lessor" as used in this lease means the party or parties who execute this lease as Lessor, although not named above.

Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to lessor, or by placing a release of record in the proper County.

Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor by payment any mortgages, taxes or other liens on the above described lands, in the event of default of payment by lessor; and be subrogated to the rights of the holder thereof.

It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out, above and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lease all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

IN TESTIMONY WHEREOF, we sign this the 29th day of August, 2003.

Lessor

_____
Lewis Don Hannah

CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit
Court and Ex-Officio Recorder do hereby
certify that this instrument was FILED
FOR RECORD and is RECORDED on this
DATE Nov. 12, 2003 3:49 and
TIME P.M. and in BOOK 06-27 PAGE 711-712
KAREN GILES, Clerk
By _____ D.C.

STATE OF ARKANSAS )
                  )
COUNTY OF         )                          INDIVIDUAL ACKNOWLEDGEMENT

Before me, the undersigned, a Notary Public, in and for said County and State, on this 29th day of August, 2003, personally appeared, Lewis Don Hannah to me known to be the identical person who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and seal the day and year last above written.

My Commission Expires: 1 DEC 2008

                                             _____
                                                  NOTARY PUBLIC

STATE OF _____ )
                  )
COUNTY OF _____ )                          JOINT ACKNOWLEDGEMENT

Before me, the undersigned, a Notary Public, in and for said County and State, on this ____ day of ____, 2003, personally appeared _____, known to be the identical persons who executed the within and foregoing instrument, and acknowledged that they executed the same as their free and voluntary act and deed, for the uses and purposes and consideration therein set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires _____

                                             _____
                                                  NOTARY PUBLIC

STATE OF _____ )
                  )
COUNTY OF _____ )                          CORPORATE ACKNOWLEDGEMENT

Before me, the undersigned, a Notary Public, in and for said County and State, on this ____ day of ____, 10 ____ appeared in person the within-named _____ and _____ of a corporation and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN WITNESS WHEREOF, I have hereunto set my official signature and affixed my official seal the day and year last above written.

My Commission Expires _____

                                             _____
                                                  NOTARY PUBLIC

712



## Ratification

**KNOW ALL MEN BY THESE PRESENTS, THAT**

WHEREAS, Fairway Land Services, Inc., P.O. Box 3495, Fort Smith, AR 72913, hereinafter referred to as Lessee, is the present owner of all rights, title, and interest under that certain Oil, Gas and Mineral Lease dated August 22, 2003, executed by Lewis Don Hannah, individually and as Trustee, 113 Brungardt, Cabot, AR 72023, as Lessor, and recorded in Book ____, Page ____, of the County Records, Cleburne County, State of Arkansas, covering the following described land situated in the said County and State:

**Section 22, Township 9 North, Range 10 West**

A part of the SW/4 NW/4 and a part of the W/2 SE/4 NW/4, more particularly described as beginning at an iron pin for the Northwest corner of said SW/4 NW/4; thence along the North boundary of said SW/4 NW/4, S 88 deg. 43'15" E 1965.19 feet to an iron pin found for the Northeast corner of said W/2 SE/4 NW/4; thence along the East boundary of said W/2 SE/4 NW/4, S 01 deg. 02'59" W 415.36 feet to an iron pin; thence leaving said East boundary, N 88 deg. 38'57" W 1755.82 feet to an iron pin; thence N 01 deg. 08'08" E 210.00 feet to an iron pin; thence N 88 deg. 38'57" W 210.00 feet to an iron pin on the West boundary of said SW/4 NW/4; thence along said West boundary, N 01 deg. 08'08" E 202.90 feet to the point of beginning, containing 17.67 acres, more or less.

AND WHEREAS, the undersigned desires to adopt, ratify and confirm said Lease insofar as it covers any present or future right, title and interest of the undersigned in and to the above-described land,
**Including all right of dower, curtesy and homestead.**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby adopts, ratifies and confirms said Lease and hereby grants, leases and lets unto Lessee the above-described lands subject to and in accordance with all of the terms and provisions of said lease. Provided, however, the undersigned shall not be paid any portion of the bonuses, royalties or rentals, payable under said Lease, during the lifetime of the Lessor, but such bonuses, royalties or rentals, if any, shall be paid to the Lessor therein named, during his lifetime.

This agreement is binding upon the heirs, successors, legal representatives, and assigns of the undersigned.

EXECUTED this ____ day of August, 2003.

X _____
Kenzie Hannah

## ACKNOWLEDGEMENT

STATE OF ARKANSAS    )
                                        )ss
COUNTY OF ~~Cleburne~~  )
         *SEBASTIAN*

On this ____ day of August, 2003, before me the undersigned Notary Public, in and for said County and State, personally appeared Kenzie Hannah, known to me to be the person whose name is subscribed to the foregoing and acknowledged to me that the same was executed for the uses, purposes and consideration therein expressed and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ____ day of August, 2003.

My commission expires:

_1 DEC 2008_                              _____
                                                         Notary Public



CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit
Court and Ex-Officio Recorder do hereby
certify that this instrument was FILED
FOR RECORD and is RECORDED on this
DATE NOV 13, 2008 at ___ and
TIME ___ in and in BOOK OC 8 PAGE 708
KAREN GILES, clerk
_____ D.C.

KAREN GILES
CIRCUIT CLERK
CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS
03 NOV 12  PM 3:49



Certficate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 10/08/2008,03:43:00 AM
Fees $23.00
DOC: # 2-00610125
Karen Giles, Clerk

_____ D.C.

Prepared By:   R.D. Williams & Company
P.O. Box 441
Fort Smith, AR 72902

## OIL AND GAS LEASE
### (PAID-UP)

THIS LEASE made and entered into this **2ⁿᵈ** day of _____October_____, _____2008_____, by and between **Lewis Don Hannah and Kenzie Hannah, husband and wife** hereinafter called Lessor, whose address is **2469 Little Rock Road, Rosebud, AR 72137-9535** and XTO Energy Inc., hereinafter called Lessee, whose address is 810 Houston Street, Fort Worth, Texas 76102.

1. That Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, in hand paid, and of the covenants and agreements hereinafter contained to be performed, does hereby grant, demise, lease and let, exclusively, unto said Lessee, for the purpose of carrying on geological, geophysical and other exploration work and the drilling, operating for, producing and saving of all the oil, gas and other hydrocarbons and all rights incident thereto, including but not limited to the right of ingress and egress and the right to construct, operate and maintain pipelines, structures and facilities, all that certain tract of land, together with any reversionary rights therein, situated in the County of **Cleburne**, State of Arkansas, described as follows:

### SECTION 22, TOWNSHIP 9 NORTH, RANGE 10 WEST

Part of the S/2 S/2 SW/4 NW/4, described as: beginning at the SW corner of SW/4 NW/4, run North 33 feet, thence East 1320 feet, thence South 33 feet, thence West 1320 feet to POB; Part of the N/2 NW/4 SW/4, described as: beginning at the NW corner of NW/4 SW/4, run South 462 feet, thence East 1320 feet, thence North 462 feet, thence West 1320 feet to POB; W/2 N/2 N/2 NE/4 SW/4; Beginning at the SW corner of said W/2 SE/4 NW/4, thence run North for 33 feet; thence run East for 660 feet; thence run South for 33 feet; thence run West for 660 feet to POB; And Beginning 45 feet North of SE corner of N/2 NW/4 SW/4 thence North 165 feet thence West 1320 feet; thence South 165 feet, thence east 1320 feet to POB.

"It is agreed between the parties hereto, that any surface operations will be negotiated under a separate contract."

containing **25.50** acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises." It is the intention of Lessor that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section(s) together with any and all accretions thereto, whether or not accurately and completely described herein.

2. This Lease shall remain in force for a primary term of **five (5)** years and as long thereafter as oil, gas or other hydrocarbons are produced or deemed to be produced, from the leased premises or from lands pooled therewith.

3. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal **twenty percent 20%** part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or, at Lessee's option, to pay Lessor for such **twenty percent 20% royalty** the gross proceeds received by Lessee for such oil and other liquid hydrocarbons.

4. Lessee shall pay or, if required by law, contribute to be paid to Lessor **twenty percent 20%** of the gross proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes, but in no event more than **twenty percent 20%** of the actual amount received by Lessee. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor twenty percent 20% of the prevailing market value at the well for the gas so used.

5. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate is sold therefrom or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease shall continue in force during all of the time or times while such well is so shut in. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor, within forty-five (45) days after the expiration of each period of one (1) year in length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net mineral acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if at the end of any such annual period this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease.



EXHIBIT
B

Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment may be made or tendered to Lessor's credit direct to Lessor at the above address or their successors, for any and all sums payable under this Lease regardless of changes of ownership in said land, or in the right to receive royalty hereunder. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

6. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all, or any part or parts, of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land, so as to create units of such size and surface acreage as Lessee may reasonably desire, but containing not more than one hundred sixty (160) acres; provided, however, a unit may be established hereunder containing not more than six hundred forty (640) acres plus ten percent (10%) acreage tolerance if utilized only as to gas rights or only as to gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same may be formed to include not more than three hundred twenty (320) acres. If at any time larger units are required under any then applicable law, rule, regulation or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable from any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on the leased premises under this Lease, and, notwithstanding the status of the well at the time of pooling, such operations shall be deemed to be in connection with a well which was commenced on the leased premises under this Lease. The term "operations" used herein shall include, without limitation, the following: commencing construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressure maintenance, cycling, secondary recovery operations; or the production of oil or gas; or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of the leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion of the leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production for the portion of the leased premises included in such pooling in the same manner as though produced from such portion of the leased premises under the terms of this Lease.

7. If Lessor owns a lesser interest in the leased premises than the entire and undivided mineral estate therein, then the royalties provided for herein shall be paid said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

8. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the leased premises or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties with certified copies of recorded instruments showing evidence of title.

9. Lessee shall have the right to use, free of cost, gas and oil found on said land for its operations. Lessee reserves the right to use water found upon said lands, except water from the wells of Lessor; however, Lessee agrees to pay Lessor fair market value for the use of any such water. When required by Lessor, Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than two hundred (200) feet to any house or other permanent structure occupied by animals or humans on the leased premises as of the date of this lease without the written consent of Lessor. Lessee shall have the right at any time during, or after the expiration of the term of this Lease to enter upon the property and to remove all machinery, fixtures and other structures placed on the leased premises, including the right to draw and remove all casing, but Lessee shall be under no obligation to do so. During the term of this lease, Lessee shall have the exclusive right to conduct exploration by geophysical or other methods upon the lands covered hereby.

10. If prior to the discovery of oil or gas on the leased premises Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this Lease shall not terminate if Lessee commences additional operations as provided herein within ninety (90) days thereafter, or, if it be within the primary term, then not until the expiration thereof. If at, or after, the expiration of the primary term oil or gas is not being produced on the leased premises, but Lessee is then engaged in operations thereon as provided herein, this Lease shall remain in force so long as operations are prosecuted (whether on the same or successive wells) with no cessation of more than ninety (90) days, and, if production results therefrom, then as long as production is maintained pursuant to the terms hereof.

11. Lessee may at any time surrender or cancel this Lease, in whole or in part, by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or canceled as to only a portion of the acreage covered hereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to that portion shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules and regulations of all governmental agencies administering the same. This lease shall not in any way be terminated, wholly or partially, nor shall Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure is the result of the exercise of such governmental authority, acts of God, explosion, blow out, fire, flood, lack of market, market conditions, lack of equipment for any cause, equipment failure, labor trouble, war or any other cause reasonably beyond the control of Lessee. Should the Lessee be prevented from complying with any of the express or implied provisions hereof or its obligations hereunder by any of the aforestated causes, the primary term of this Lease shall be extended until one year after the removal of such cause or causes.

13. Lessor hereby warrants and agrees to defend the title to the leased premises and agrees that Lessee, at its option, may pay or discharge, in whole or in part, any taxes, encumbrances or other liens existing, levied or assessed against the leased premises and, in the event Lessee exercises such option, it shall be subrogated to the rights of any holder(s) thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of such encumbrance, tax or other lien paid by Lessee plus any costs, expenses or attorney's fees reasonably incurred by Lessee and interest at the rate of ten percent (10%) per annum. To facilitate Lessee's proper payment hereunder, it is

specifically understood and agreed that Lessee will require Lessor to execute and return Lessee's then current form of division order or other payment directive as a condition precedent to Lessee's obligation to pay royalties from production hereunder.

14. Lessee is hereby given the right to acquire for its own benefit, deeds, leases or assignments covering any interest or claim in the leased premises which Lessee or any other party contends is outstanding and not covered hereby even though such outstanding interest or claim may be invalid or adverse to Lessor. In the event the validity of this Lease, or Lessee's privilege to exercise its rights hereunder, be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises, all royalties or other payments which would otherwise accrue shall be suspend

15. It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out, above and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

16. This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

17. Lessee is hereby given the option to extend the primary term of this lease as to all or any portion of the leased premises for an additional 5 years from the expiration of the primary term. This option may be exercised by Lessee at any time during the last year of the primary term by paying or tendering to the Lessor at the address herein provided or to the credit of Lessor in the depository bank named herein (which bank shall) be and remain the agent for Lessor, unless notified otherwise, for such purpose regardless of any change or changes in the ownership of the land or mineral rights therein) the same bonus consideration per net mineral acre herein paid to be covered by such extension; provided, however, that no payment shall be necessary with respect to net mineral acres covered by this lease which are included with a unit upon which there is a well producing or capable of producing oil, gas or associated hydrocarbons. Should this option be exercised as herein provided, it shall be considered for all purposes as though this lease originally provided for a primary term of 10 years.

IN WITNESS WHEREOF, this Lease is executed as of the date first set out hereinabove.

LESSOR (S):

_Lewis Don Hannah_ (signature)
Lewis Don Hannah

_Kenzie Hannah_ (signature)
Kenzie Hannah

### ACKNOWLEDGEMENT

STATE OF __ARKANSAS__ }

COUNTY OF _Cleburne_

On this _2nd_ day of _Oct_, 20 _08_, before me, a Notary Public in and for said County and State, personally appeared Lewis Don Hannah and Kenzie Hannah, husband and wife _____ known to be the person(s) whose name(s) are subscribed to the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purpose and consideration therein mentioned and set forth, including the relinquishment of dower, curtesy and homestead.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this _2nd_ day of _Oct_, 20 _08_.

My commission expires:

__12-13-2017__

_Sherry L. Ramsey_ (signature)
Notary Public

SHERRY L. RAMSEY
Arkansas - Crawford County
Notary Public - Comm# 12345616
My Commission Expires Dec 13, 2017



Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & recorded in Cleburne County
Date 10/06/2008, 03:43:09 PM
Fees $c5.00
DOC #: 200810125
Karen Giles, Clerk
                                    D.C.

Prepared By:   R.D. Williams & Company
               P.O. Box 441
               Fort Smith, AR 72902

## OIL AND GAS LEASE
### (PAID-UP)

THIS LEASE made and entered into this this 2nd   day of   October               , 2008   , by and between
Lewis Don Hannah and Kenzie Hannah, husband and wife                    hereinafter called Lessor, whose address is
2469 Little Rock Road, Rosebud, AR 72137-9535                          and XTO Energy Inc.,
hereinafter called Lessee, whose address is 810 Houston Street, Fort Worth, Texas 76102.

1. That Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, in hand paid, and of the covenants and agreements hereinafter contained to be performed, does hereby grant, demise, lease and let, exclusively, unto said Lessee, for the purpose of carrying on geological, geophysical and other exploration work and the drilling, operating for, producing and saving of all the oil, gas and other hydrocarbons and all rights incident thereto, including but not limited to the right of ingress and egress and the right to construct, operate and maintain pipelines, structures and facilities, all that certain tract of land, together with any reversionary rights therein, situated in the County of Cleburne, State of Arkansas, described as follows:

### SECTION 22, TOWNSHIP 9 NORTH, RANGE 10 WEST

**Part of the S/2 S/2 SW/4 NW/4, described as: beginning at the SW corner of SW/4 NW/4, run North 33 feet, thence East 1320 feet, thence South 33 feet, thence West 1320 feet to POB; Part of the N/2 NW/4 SW/4, described as: beginning at the NW corner of NW/4 SW/4, run South 462 feet, thence East 1320 feet, thence North 462 feet, thence West 1320 feet to POB; W/2 N/2 N/2 NE/4 SW/4; Beginning at the SW corner of said W/2 SE/4 NW/4, thence run North for 33 feet; thence run East for 660 feet; thence run South for 33 feet; thence run West for 660 feet to POB; And Beginning 45 feet North of SE corner of N/2 NW/4 SW/4 thence North 165 feet thence West 1320 feet; thence south 165 feet, thence east 1320 feet to POB.**

**"It is agreed between the parties hereto, that any surface operations will be negotiated under a separate contract."**

containing 25.50 acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises." It is the intention of Lessor that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section(s) together with any and all accretions thereto, whether or not accurately and completely described herein.

2. This Lease shall remain in force for a primary term of five (5) years and as long thereafter as oil, gas or other hydrocarbons are produced or deemed to be produced, from the leased premises or from lands pooled therewith.

3. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal twenty percent 20% part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or, at Lessee's option, to pay Lessor for such twenty percent 20% royalty the gross proceeds received by Lessee for such oil and other liquid hydrocarbons.

4. Lessee shall pay or, if required by law, contribute to be paid to Lessor twenty percent 20% of the gross proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes, but in no event more than twenty percent 20% of the actual amount received by Lessee. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor twenty percent 20% of the prevailing market value at the well for the gas so used.

5. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate is sold therefrom or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease shall continue in force during all of the time or times while such well is so shut in. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor, within forty-five (45) days after the expiration of each period of one (1) year in length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net mineral acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if at the end of any such annual period this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease.

Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment may be made or tendered to Lessor's credit direct to Lessor at the above address or their successors, for any and all sums payable under this Lease regardless of changes of ownership in said land, or in the right to receive royalty hereunder. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

6. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all, or any part or parts, of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land, so as to create units of such size and surface acreage as Lessee may reasonably desire, but containing not more than one hundred sixty (160) acres: provided, however, a unit may be established hereunder containing not more than six hundred forty (640) acres plus ten percent (10%) acreage tolerance if utilized only as to gas rights or only as to gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same may be formed to include not more than three hundred twenty (320) acres. If at any time larger units are required under any then applicable law, rule, regulation or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable from any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on the leased premises under this Lease, and, notwithstanding the status of the well at the time of pooling, such operations shall be deemed to be in connection with a well which was commenced on the leased premises under this Lease. The term "operations" used herein shall include, without limitation, the following: commencing construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressure maintenance, cycling, secondary recovery operations; or the production of oil or gas; or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of the leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion of the leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production for the portion of the leased premises included in such pooling in the same manner as though produced from such portion of the leased premises under the terms of this Lease.

7. If Lessor owns a lesser interest in the leased premises than the entire and undivided mineral estate therein, then the royalties provided for herein shall be paid said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

8. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the leased premises or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties with certified copies of recorded instruments showing evidence of title.

9. Lessee shall have the right to use, free of cost, gas and oil found on said land for its operations. Lessee reserves the right to use water found upon said lands, except water from the wells of Lessor; however, Lessee agrees to pay Lessor fair market value for the use of any such water. When required by Lessor, Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than two hundred (200) feet to any house or other permanent structure occupied by animals or humans on the leased premises as of the date of this Lease without the written consent of Lessor. Lessee shall have the right at any time during or after the expiration of the term of this Lease to enter upon the property and to remove all machinery, fixtures and other structures placed on the leased premises, including the right to draw and remove all casing, but Lessee shall be under no obligation to do so. During the term of this lease, Lessee shall have the exclusive right to conduct exploration by geophysical or other methods upon the lands covered hereby.

10. If prior to the discovery of oil or gas on the leased premises Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this Lease shall not terminate if Lessee commences additional operations as provided herein within ninety (90) days thereafter, or, if it be within the primary term, then not until the expiration thereof. If at, or after, the expiration of the primary term oil or gas is not being produced on the leased premises, but Lessee is then engaged in operations thereon as provided herein, this Lease shall remain in force so long as operations are prosecuted (whether on the same or successive wells) with no cessation of more than ninety (90) days, and, if production results therefrom, then as long as production is maintained pursuant to the terms hereof.

11. Lessee may at any time surrender or cancel this Lease, in whole or in part, by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or canceled as to only a portion of the acreage covered hereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to that portion shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules and regulations of all governmental agencies administering the same. This Lease shall not in any way be terminated, wholly or partially, nor shall Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure is the result of the exercise of such governmental authority, acts of God, explosion, blow out, fire, flood, lack of market, market conditions, lack of equipment for any cause, equipment failure, labor trouble, war or any other cause reasonably beyond the control of Lessee. Should the Lessee be prevented from complying with any of the express or implied provisions hereof or its obligations hereunder by any of the aforestated causes, the primary term of this Lease shall be extended until one year after the removal of such cause or causes.

13. Lessor hereby warrants and agrees to defend the title to the leased premises and agrees that Lessee, at its option, may pay or discharge, in whole or in part, any taxes, encumbrances or other liens existing, levied or assessed against the leased premises and, in the event Lessee exercises such option, it shall be subrogated to the rights of any holder(s) thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of such encumbrance, tax or other lien paid by Lessee plus any costs, expenses or attorney's fees reasonably incurred by Lessee and interest at the rate of ten percent (10%) per annum. To facilitate Lessee's proper payment hereunder, it is

specifically understood and agreed that Lessee will require Lessor to execute and return Lessee's then current form of division order or other payment directive as a condition precedent to Lessee's obligation to pay royalties from production hereunder.

14. Lessee is hereby given the right to acquire for its own benefit, deeds, leases or assignments covering any interest or claim in the leased premises which Lessee or any other party contends is outstanding and not covered hereby even though such outstanding interest or claim may be invalid or adverse to Lessor. In the event the validity of this Lease, or Lessee's privilege to exercise its rights hereunder, be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises, all royalties or other payments which would otherwise accrue shall be suspend

15. It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out, above and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

16. This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

17. Lessee is hereby given the option to extend the primary term of this lease as to all or any portion of the leased premises for an additional 5 years from the expiration of the primary term. This option may be exercised by Lessee at any time during the last year of the primary term by paying or tendering to the Lessor at the address herein provided or to the credit of Lessor in the depository bank named herein (which bank shall be and remain the agent for Lessor, unless notified otherwise, for such purpose regardless of any change or changes in the ownership of the land or mineral rights therein) the same bonus consideration per net mineral acre herein paid to be covered by such extension; provided, however, that no payment shall be necessary with respect to net mineral acres covered by this lease which are included with a unit upon which there is a well producing or capable of producing oil, gas or associated hydrocarbons. Should this option be exercised as herein provided. It shall be considered for all purposes as though this lease originally provided for a primary term of 10 years.

IN WITNESS WHEREOF, this Lease is executed as of the date first set out hereinabove.

LESSOR (S):

_Lewis Don Hannah_
Lewis Don Hannah

_Kenzie Hannah_
Kenzie Hannah

### ACKNOWLEDGEMENT

STATE OF __ARKANSAS__ }

COUNTY OF Cleburne

On this 2nd day of Oct, 20 08 , before me, a Notary Public in and for said County and State, personally appeared Lewis Don Hannah and Kenzie Hannah, husband and wife                                    known to be the person(s) whose name(s) are subscribed to the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purpose and consideration therein mentioned and set forth, including the relinquishment of dower, curtesy and homestead.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 2nd day of Oct, 20 08 .

My commission expires:
12-13-2017

_Sherry L. Ramsey_
Notary Public

SHERRY L. RAMSEY
Arkansas - Crawford County
Notary Public - Comm# 12343514
My Commission Expires Dec 13, 2017

IN THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS

LEWIS DON HANNAH

PLAINTIFF

VS.                                    CASE NO: CV-2013-163

XTO ENERGY INC.                                              DEFENDANT

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## AND REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW the Plaintiff, by and through counsel, Sutter & Gillham, P.L.L.C., who

hereby propounds the following Interrogatories and Requests for Production of Documents upon

Defendants, to be answered in the time and manner as prescribed by the Rules of Civil

Procedure:

DEFINITIONS:

Except whether otherwise expressly indicated, the following definitions shall apply
throughout these Interrogatories:

I. "DOCUMENT" means any material subject to discovery under the Rules of Civil
Procedure including, but not limited to, the original and non-identical copies of correspondence,
memoranda, agreements, notes, handwritten notes and scratch pads or sheets, accounting
entries, purchase orders, invoices, statements of account, records, computer printouts,
calculations, tape recordings and all of the writings, recordings of communications, recordings or
data compilations in whatever form, including drafts thereof, machine readable information, and
any material underlying, supporting or used in the preparation of any document now or formerly
within the actual or constructive possession, custody or control of Defendant.

II. "IDENTIFY", when used in reference to a document shall mean to state its: (1) date; (2)
author; (3) type of document, (e.g., letter, memorandum, receipt, invoice, schedule, report,
telegraph, chart, photograph, sound reproduction, or note); and (4) its present location and the
name and address of each present custodian. If any such document was, but is no longer in the
possession of Defendant, or subject to its control, or it is no longer in existence, state whether it is:
(a) missing or lost; (b) destroyed; (c) transmitted or transferred, voluntarily or involuntarily to other,
identifying such others; or (d) otherwise disposed of, and in each instance, explain the
circumstances surrounding an authorization for such disposition and state the date or approximate
date thereof. To the extent that any of the above information is not available, state any other means
of identifying such document.

III. "ORAL COMMUNICATION" means all conversations, statements and remarks
whether taped, transcribed, recorded or otherwise. When the term "identify" is used herein in
conjunction with the term "oral communication," or if the answer to any Interrogatory herein
refers to an oral communication, the answer should be fully descriptive of such oral
communication typically including: (a) The date of said communication; (b) The place at which it
occurred; (c) The person involved, and the last known home address, home telephone number

of each person, as well as the present or last known position and business affiliation or employer of each such person; and (d) The substance of the communication.

IV. "PERSON" or "PERSONS", as used herein, shall be deemed to include natural persons, firms, partnerships, associations, joint ventures and corporations.

V. "IDENTIFY", when used in reference to a natural person shall mean to state: (1) his full name, last known address, and telephone number; (2) his present or last known business affiliations and positions in respect thereto during the applicable time as herein defined, and (3) his social security number. To the extent that any of the above information is not available, state all other available means of identifying such natural person.

VI. "YOU" or "YOUR" refers to Defendant, and/or his attorney, agent or others acting on his or their behalf.

VII. "TIME FRAME" where no time frame is specifically indicated or requested herein, Defendant is instructed to specify any relevant time period in his answer.

VIII. The male gender includes the female and the singular includes the plural.

<u>INTERROGATORIES</u>:

Please review the Definitions sections above prior to formulating your answers to these Interrogatories.

**INTERROGATORY NO. 1:** Please identify, as described above, each and every person of whom you are aware with knowledge of the facts and circumstances involved in this lawsuit.

**INTERROGATORY NO. 2:** For each person identified in the preceding Interrogatory, please state a brief summary of all facts you believe the person knows and whether you intend to call the person identified to testify at the trial of this cause.

**INTERROGATORY NO. 3:** Do you intend to call any expert witnesses at trial of this cause? If so, please state:

    (a) The field of expertise of the witness;

    (b) The subject matter which is expected to testify, and;

    (c) The substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each such opinion.

**INTERROGATORY NO. 4:** Have you any tangible items of correspondence, memoranda, records, or any other item, which you may offer in evidence at trial of this matter? If so, please enumerate and identify specifically by date and item each such instrument.

**REQUEST FOR PRODUCTION NO. 1:**  Please produce and attach copies of any and all documents identified in your answer to Interrogatory No. 4 above.

**INTERROGATORY NO. 5:**  Please state specifically all facts that support your denial of any allegations contained in Plaintiff's Complaint.

**INTERROGATORY NO. 6:**  Please identify each and every person who has had any oral communication with Plaintiff on behalf of the Defendant since the date of the incidents alleged in Plaintiff's Complaint. Please enumerate and identify such oral communication as detailed in the Definitions above.

**INTERROGATORY NO. 7:**  Please enumerate and identify specifically by date and item each and every document produced as a result of any oral or written communication that Defendant, or representative of, had with Plaintiff, or any representative of Plaintiff, since the date of the incidents alleged in Plaintiff's Complaint.

**REQUEST FOR PRODUCTION NO. 2:**  Please produce and attach copies of any and all documents identified in your answer to Interrogatory No. 7 above.

**INTERROGATORY NO. 8:**  With respect to any and all policies of insurance, including primary and excess insurance policies, which may provide coverage for the damages sought by the Plaintiff(including bodily injury, uninsured motorist, underinsured motorist, excess coverage, umbrella coverage, and any other potential insurance coverage of any kind), please state:

    (a)    The name of each insurance company providing coverage;

    (b)    The extent of coverage provided by each policy of insurance, including coverage for both personal injury and property damage;

    (c)    The policy number of each policy of insurance; and

    (d)    The effective date of each policy of insurance.

**REQUEST FOR PRODUCTION NO. 3:**  Please produce and attach copies of the insurance policies and declarations page for each of those policies identified in your answer to Interrogatory No. 8 above.

**INTERROGATORY NO. 9:**  For each affirmative defense you have asserted, please state all facts that support such assertion.

**INTERROGATORY NO. 10:**  If you have pled insufficiency of process or insufficiency of service of process, please state all facts that support this assertion.

**INTERROGATORY NO. 11:**  Identify all persons who have been consulted or who have contributed in any way to the collection of information and/or the formulation of the answers contained herein.

**INTERROGATORY NO. 12:**  Please state if you will treat these Interrogatories and Requests for Production of Documents as continuing in nature and supplement your answers or responses hereto within 10 days of obtaining information that modifies the responses made.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910  Office
501-315-1916  Facsimile
Attorney for the Plaintiff

By:   /s/ Luther Oneal Sutter
Luther Oneal Sutter, AR Bar No. 95031
luthersutter.law@gmail.com

g:\doc\Hannah, Don & Kenzie\DISC\2013-11-14  PLT DISC1 - Hannah, Don.doc

4



CERTIFIED MAIL

7008 1630 0001 9231 4221

Hasler
01/15/2014
US POSTAGE    $08.11⁰
ZIP 72015
011D10608768

**HARRILL & SUTTER, P.L.L.C.**
*Attorneys at Law*
310 West Conway Street
Benton, AR 72015

*ADDRESS SERVICE REQUESTED*

Corporation Service Company
300 Springs Building
300 S Spring Street, Suite 900
Little Rock, AR 72201

# SUTTER & GILLHAM, P.L.L.C.

### ATTORNEYS AT LAW
MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910   FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.        JAMES M. SCURLOCK        LUCIEN R. GILLHAM, P.A.

January 15, 2013

**Via Certified Mail/Return Receipt 7008 1830 0001 9231 4221**

Corporation Service Company
300 Springs Building
300 S Spring Street, Suite 900
Little Rock, AR 72201

      Re:    Lewis Don Hannah v. XTO Energy Inc.
                 Case No. CV-2013-163

To Whom it May Concern:

       Enclosed please find the following Summons and Complaints and Plaintiff's First Set of Interrogatories and Requests for Production of Documents to be served on XTO Energy, Inc..

       When you have obtained service, please complete the return of service and affidavit and forward to my office in the enclosed self-addressed, stamped envelope.

       If you have any questions or concerns, you may call our office at (501) 315-1910

       Your assistance is greatly appreciated.

       Sincerely,

       Lois Palmer

Encl.



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

null / ALL
**Transmittal Number: 12097431**
**Date Processed: 01/24/2014**

| | |
|---|---|
| Primary Contact: | Nicholas Vincent<br>XTO Energy Inc.<br>Suite 2000<br>810 Houston Street<br>Fort Worth, TX 76102 |
| Copy of transmittal only provided to: | Helen Ondrej<br>Elizabeth Murphy |

| | |
|---|---|
| **Entity:** | XTO Energy Inc.<br>Entity ID Number  1737644 |
| **Entity Served:** | XTO Energy, Inc. |
| **Title of Action:** | Lewis Don Hannah vs. XTO Energy, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Cleburne County Circuit Court, Arkansas |
| **Case/Reference No:** | CV-2013-163 |
| **Jurisdiction Served:** | Arkansas |
| **Date Served on CSC:** | 01/24/2014 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Luther Oneal Sutter<br>501-315-1910 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

KAREN GILES
CIRCUIT CLERK

2014 FEB 19  AM 11: 38

CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS

## IN THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS

**LEWIS DON HANNAH**                                                     **PLAINTIFF**

    **V.**                        **CASE NO.  CV-2013-163**

**XTO ENERGY INC.**                                                     **DEFENDANT**

### ANSWER

COMES NOW the Defendant XTO Energy Inc. ("XTO"), and for its Answer to the Plaintiffs' Complaint, states and alleges:

1.    XTO admits the allegations of paragraph 1 of the Complaint.  Pleading affirmatively, XTO states that the United States District Court for the Eastern District of Arkansas, Little Rock Division, has concurrent jurisdiction of the subject matter and parties hereto, and that venue is likewise proper in such court.

2.    XTO admits the execution and recording of the documents attached as Exhibit A to the Complaint.  Pleading affirmatively, XTO states that the documents speak for themselves.

3.    XTO admits the execution and recording of the documents attached as Exhibit B to the Complaint.  Pleading affirmatively, XTO states that the documents speak for themselves.

4.    XTO admits that natural gas has been produced and is being produced from a drilling and spacing unit consisting of Section 22, Township 9 North, Range 10 West, Cleburne County, Arkansas.  All remaining allegations of paragraph 4 of the Complaint are denied.

5.    The allegations of paragraph 5 of the Complaint are denied.



EXHIBIT

B

6.      The allegations of paragraph 6 of the Complaint are denied.

7.      The allegations of paragraph 7 of the Complaint are denied.

8.      The allegations of paragraph 8 of the Complaint are denied.

9.      The allegations of paragraph 9 of the Complaint are denied.

10.     The allegations of paragraph 10 of the Complaint are denied.

11.     Pleading further and in the affirmative, XTO asserts the following defenses and affirmative defenses:

        a.      Failure to state facts upon which relief can be granted; and,

        b.      Unmarketability of the Plaintiff's title which substantially affects the making of royalty payments and which constitutes just cause for the withholding of royalty payments.

WHEREFORE, XTO prays that the Plaintiff's Complaint be denied and dismissed, that it have and recover its costs and attorney's fees herein laid out and expended, and for all other just and proper relief to which it may be entitled.

                        Respectfully submitted,

                        HARDIN, JESSON & TERRY, PLC
                        P.O. Box 10127
                        Fort Smith, AR 72917-0127
                        Telephone: (479) 452-2200


By:     _____
        Robert M. Honea
        ABA #: 83089

        *Attorneys for Defendant XTO Energy Inc.*

## CERTIFICATE OF SERVICE

I, Robert M. Honea, one of the attorneys for Defendant XTO Energy Inc., do hereby certify that a true and correct copy of the above and foregoing pleading has been served upon all parties by forwarding a copy of same in the United States Postal Service, postage prepaid, on this 19 day of February, 2013, addressed to:

Luther Oneal Sutter
SUTTER & GILLHAM, PLLC
PO Box 2012
Benton, AR  72018

_____
Robert M. Honea